IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

ANDREA HUNTER,
on behalf of herself and all others
similarly situated,

    Plaintiff,

vs.

NORTH BROWARD HOSPITAL DISTRICT
d/b/a BROWARD HEALTH,

    Defendant.
_____/

**DEFENDANT'S NOTICE OF REMOVAL**

Pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, Defendant North Broward Hospital District d/b/a Broward Health ("Broward Health") hereby files this Notice of Removal of the action filed by Andrea Hunter ("Plaintiff"), on behalf of herself and all others similarly situated, in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-000372, to the United States District Court for the Southern District of Florida.

**JURISDICTION AND VENUE**

This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d). This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

1

## THE ACTION & TIMELINESS OF REMOVAL

### I.   Factual and procedural background

On January 7, 2022, Plaintiff, on behalf of herself and all others similarly situated, filed a Class Action Complaint against Broward Health in the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida, Case No. CACE-22-000372 (the "State Court Action"). Plaintiff filed the Complaint as a putative class action. A true and correct copy of the Complaint in the State Court Action is attached as **Exhibit 1**.

On March 8, 2022, Broward Health filed an Agreed Waiver of Issuance of Summons and Service of Process. A true and correct copy of the Agreed Waiver of Issuance of Summons and Service of Process is attached as **Exhibit 2**. A copy of the docket in the State Court Action is attached as **Exhibit 3**. Pursuant to 28 U.S.C § 1446(a), all other process, pleadings, and orders that have been filed and served in the State Court Action are attached to this Notice of Removal as **Exhibit 4**. The civil cover sheet is attached as **Exhibit 5**.

This removal is timely because Broward Health filed this removal within thirty days of filing the Agreed Waiver of Issuance of Summons and Service of Process. *See* 28 U.S.C. § 1446(b) (notice of removal shall be filed within thirty days of service); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999) (stating that the time period for removal begins when the defendant is served).

### II.   CAFA jurisdiction

This Court has original jurisdiction over this State Court Action under CAFA (codified in pertinent part at 28 U.S.C. § 1332(d)). Section 1332(d) provides that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000.

Section 1332(d) further provides that, for original jurisdiction to exist, "any member of a class of plaintiffs" must be a "citizen of a State different from any Defendant." 28 U.S.C. § 1332(d)(2)(A).

Notably, two nearly *identical* putative class action complaints have been directly filed in the Southern District of Florida and allege the Court has subject matter jurisdiction pursuant to CAFA. In *Walecki v. North Broward Hospital District*, the plaintiff alleges:

> [t]his Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members and at least some members of the proposed Class, including Plaintiff, have a different citizenship from Broward Health. . . .

*Walecki v. North Broward Hospital District*, Case No. 0:22-cv-60083-WPD (S.D. Fla. filed January 12, 2022) (consolidated with *Esterly v. North Broward Hospital District*, Case No. 0:22-cv-60055-WPD (S.D. Fla. filed January 8, 2022))[1] (Walecki Compl., attached as **Exhibit 6**, ¶ 27).[2] *Esterly* is the other putative class action filed and pending in the Southern District of Florida under CAFA with a nearly identical class definition. *Esterly* and *Walecki* were consolidated under Case

---

[1] In total, there are currently nine filed class actions based on the same alleged data incident. *See Valencia & Joseph v. North Broward Hospital District*, CACE-22-000336 (Fla. 17th Cir. Ct. filed January 7, 2022) (complaint attached as **Exhibit 7**); *Esterly v. North Broward Hospital District*, Case No. 0:22-cv-60055-WPD (S.D. Fla. filed January 8, 2022) (complaint attached as **Exhibit 8**); *Prizer & Sims v. North Broward Hospital District*, CACE-22-000537 (Fla. 17th Cir. Ct. filed January 11, 2022) (complaint attached as **Exhibit 9**); *Walecki*, Case No. 0:22-cv-60083-WPD (consolidated with *Esterly*, Case No. 0:22-cv-60055-WPD) (complaint attached as **Exhibit 6**); *Hale v. North Broward Hospital District*, 0:22-cv-60362-DPG (S.D. Fla. filed January 12, 2022) (complaint attached as **Exhibit 10**); *Beck v. North Broward Hospital District*, CACE-22-000803 (Fla. 17th Cir. Ct. filed January 18, 2022) (complaint attached as **Exhibit 11**); *Levy & Leslie v. North Broward Hospital District*, CACE-22-000857 (Fla. 17th Cir. Ct. filed January 19, 2022) (complaint attached as **Exhibit 12**); *Caraganis et al. v. North Broward Hospital District*, CACE-22-000869 (Fla. 17th Cir. Ct. filed January 19, 2022) (complaint attached as **Exhibit 13**).

[2] Notably, a district court may take judicial notice of public records and public court dockets. *See Aldar Tobacco Grp., LLC v. Am. Cigarette Co., Inc.*, No. 08-62018-CIV, 2017 WL 8794599, at *1 (S.D. Fla. Sept. 20, 2017) (citing *Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010) ("A court may take judicial notice of public records, including public court dockets.").

No. 22-cv-60055-WPD. *See Esterly*, Case No. 0:22-cv-60055-WPD [DE 10]. Case No. 22-cv-60083-WPD has been administratively closed. *Id.* In *Esterly*, the plaintiff similarly alleges:

> This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. There are more than 100 putative class members and at least some members of the proposed Class have a different citizenship from Broward Health. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because all claims alleged herein form part of the same case or controversy.

(**Exhibit 8**, ¶ 7).

The claims asserted in *Walecki* and *Esterly* are based on nearly identical facts giving rise to the state court claims asserted in this State Court Action, and both complaints include counts for negligence, negligence *per se*, breach of contract, breach of implied contract, breach of confidence, unjust enrichment, and declaratory judgment. Additionally, the putative class definition and size in *Walecki* is substantively identical to this State Court Action, encompassing "[a]ll persons who reside *in the United States* whose Sensitive Information was compromised by the Data Breach" and comprises roughly 1.3 million individuals. (**Exhibit 6**, ¶¶ 87, 92) (emphasis supplied). Likewise, the putative class definition in *Esterly* is "[a]ll individuals whose personal information was compromised in the Data Breach . . . ." (**Exhibit 8**, ¶ 96).

Thus, as in *Walecki* and pursuant to 28 U.S.C. § 1332(d) and § 1441(a), this Court has subject matter jurisdiction over this State Court Action filed by Andrea Hunter, on behalf of herself and all others similarly situated, pursuant to CAFA because: (i) this State Court Action is pleaded as a class action; (ii) the putative class includes more than one hundred (100) members; (iii) members of the putative class are citizens of a state different from that of Defendant; and (iv) the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000, exclusive of interest and costs.

    a.    *The action is pleaded as a class action.*

CAFA defines a "class action" as "any class action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State* statute or *rule of judicial procedure* authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis supplied).

Plaintiff brings the State Court Action as a "class action" and seeks class certification under Florida law pursuant to Rule 1.220, Florida Rules of Civil Procedure. (Compl., attached as **Exhibit 1**, ¶¶ 101–115). "Florida's Class Action rule, Florida Rule of Civil Procedure 1.220, is based on Federal Rule of Civil Procedure 23," *see Concerned Class Members v. Sailfish Point, Inc.*, 704 So. 2d 200 (Fla. 4th DCA 1998), therefore, the first CAFA requirement is met. (Compl. ¶ 101) ("Plaintiff brings this suit as a class action on behalf of herself and on behalf of all others similarly situated . . . .").

    b.    *The putative class includes at least one hundred (100) members.*

Plaintiff defines the Class as "[a]ll individuals whose PHI was compromised in the Broward Health Data Breach which occurred in October 2021." (Compl. ¶ 102). Plaintiff asserts that "[t]he Class is comprised of at least 1.35 million patients." *Id.* ¶ 105 (emphasis supplied) (the roughly 1.35 million putative class members are hereinafter referred to as the "Class Member(s)"). Therefore, the number of Class Members clearly exceeds the statutorily required minimum of 100 members.

    c.    *Minimal diversity of citizenship exists.*

Pursuant to 28 U.S.C. § 1332(d)(2)(A), the "district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant." As such, only one member of the putative class must be diverse for diversity of

citizenship to be satisfied under CAFA. *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (internal citation omitted) ("Under CAFA, federal courts now have original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)").

While Plaintiff alleges that she is a citizen of Florida, the putative class she seeks to represent is much broader, as it encompasses approximately 1.35 million patients that allegedly were impacted by the data incident. Approximately twenty-eight states (including state attorneys general and state agencies) have been placed on notice of the data incident based on residents of their respective states potentially affected by the data incident. *See* Declaration ¶ 7 (attached as **Exhibit 14**). Broward Health also sent written notice to individual addresses in all fifty states, the District of Columbia, and Puerto Rico as well as to international addresses. *Id.* In fact, Plaintiff cites to the Office of the Maine Attorney General's website, which identifies 473 Maine residents potentially affected. (Compl. ¶ 3 n.1). Additionally, in the *Walecki* action, which encompasses the nearly identical putative class, Walecki alleges she "is a natural person domiciled in the State of Virginia [and] [h]er permanent residence is located in the State of Virginia." (**Exhibit 6**, ¶ 13). Thus, as Walecki also falls within the class definition in this case, at least one of the Class Members is a non-Florida citizen.

Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," *i.e.*, the corporation's "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). In practice, the nerve center is normally "the place where the corporation maintains its headquarters . . . ." *Id.*

at 93. "The public often (though not always) considers it the corporation's main place of business." *Id.* Broward Health is a special independent taxing district created pursuant to Florida Statutes for the purpose of establishing and operating the necessary health facilities for the preservation of the public health and well-being of the citizens of Broward County, Florida. Accordingly, pursuant to *Hertz*'s nerve center test, Broward Health's principal place of business is in Broward County, Florida, and its corporate headquarters are located at 1800 NW 49th Street, Suite 110, Fort Lauderdale, Florida 33309. (Compl. ¶ 9). Thus, Broward Health is a citizen of the State of Florida.

In sum, minimal diversity exists pursuant to CAFA because Defendant is a citizen of the State of Florida, and at least one of the Class Members is a citizen of a state other than Florida.

   d. *The amount in controversy exceeds the CAFA threshold.*

As a preliminary matter, the amounts set forth in this Notice of Removal are solely for purpose of establishing that the *amount in controversy* exceeds the $5,000,000 threshold and are not intended to—and cannot be construed as—an admission that Plaintiff can state a claim, establish Article III standing, or is entitled to damages in any amount or not otherwise subject to the statutory caps under Section 768.28, Florida Statutes.[3] *See S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (internal citations omitted) ("What counts is the amount in controversy at the time of removal. It is less a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation . . . ."). Defendant denies liability, denies that Plaintiff is entitled to recover any amount, and denies that a class can be properly certified in this matter.

Where a complaint does not specify the amount of damages sought, the removing defendant must demonstrate by a preponderance of the evidence that the jurisdictional amount in

---

[3] *See* "Impact of Sovereign Immunity" section discussed *infra* at 13–14.

controversy is satisfied. 28 U.S.C. § 1446(c)(2)(B); *see also Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (internal citations omitted) ("When the plaintiff contests or the court questions the defendant's allegation, the defendant must prove by a preponderance of the evidence that the amount in controversy is sufficient."). "[A] defendant's notice of removal need include only a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (emphasis supplied). To determine whether the defendant has met its burden, "a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence." *Anderson*, 943 F.3d at 925 (internal citation omitted).

Here, the Complaint does not specify the total amount of damages sought. However, at approximately 1.35 million Class Members, the damages and relief sought by the Class Members need only average *$3.71* per Class Member to satisfy the $5,000,000 amount in controversy requirement. To put into context, Plaintiff cites to a report focusing on healthcare breaches that found that the average cost to resolve an identity theft-related incident came to about $20,000 per person. (Compl. ¶ 42 n.16). Further, Walecki alleges in her complaint, which arises out of the same underlying alleged data incident, that "[t]he amount in controversy exceeds $5 million exclusive of interest and costs." (**Exhibit 6**, ¶ 27). For this reason and those discussed below, the allegations in the Complaint make it more likely than not that the amount in controversy requirement under CAFA is satisfied.

Under each count of the Complaint, Plaintiff and the Class Members seek similar types of damages. Generally speaking, Plaintiff alleges:

> As a result of a result of Broward's failure to prevent the Data Breach, Plaintiff and Class Members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at increased risk of suffering:

      a. Actual identity theft;
      b. Unauthorized use and misuse of their PHI;
      c. The loss of the opportunity to control how their PHI is used;
      d. The diminution in value of their PHI;
      e. The compromise, publication, and/or theft of their PHI;
      f. *Out-of-pocket costs* associated with the prevention, detection, recovery and remediation from identity theft or fraud;
      g. Lost opportunity costs and *lost wages* associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity theft and fraud;
      h. Costs associated with placing freezes on credit reports;
      i. Delay in receipt of tax refund monies;
      j. The diminished value of Broward's goods and services they received;
      k. Lost opportunity and benefits of electronically filing of income tax returns;
      l. The imminent and certain impending injury flowing from potential fraud and identity theft posed by their PHI being placed in the hands of criminals;
      m. The continued risk to their PHI, which remains in the possession of Broward and is subject to further breaches so long as Broward fails to undertake appropriate measures to protect the PHI in its possession; and
      n. *Current and future costs* in terms of time, effort and money that will be expended to prevent, detect, contest, remediate and repair the impact of the Data Breach for *the remainder of the lives* of Plaintiff and Class Members.

(Compl. ¶ 73) (emphasis supplied). As one category of damages, Plaintiff and the Class Members seek lost wages and seek compensation for that loss. Even taking the minimum wage in Florida, multiplied by just thirty minutes of alleged lost wages due to "time expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the Data Breach," the amount in controversy would exceed $5,000,000. Specifically, effective September 30, 2021, the Florida minimum wage became $10.00 per hour.[4] As the minimum wage in Florida is $10.00 an hour, compensation for *only thirty minutes* of time spent by each of the approximately 1.35 million Class Members, on an individual or average basis, equals $6,750,000.

---

[4] https://floridajobs.org/docs/default-source/business-growth-and-partnerships/for-employers/posters-and-required-notices/2021-minimum-wage/september-2021/florida-minimum-wage-september-2021-announcement.pdf?sfvrsn=c12151b0_4.

In Count I for negligence, Plaintiff alleges that as a direct and proximate result of Broward Health's negligence:

> Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PHI is used; (iii) the compromise, publication, and/or theft of their PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PHI, which remain in Broward's possession and is subject to further unauthorized disclosures so long as Broward fails to undertake appropriate and adequate measures to protect the PHI of patients and former patients in its continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repaid the impact of the PHI compromised as a result of the Data Breach *for the remainder of the lives of Plaintiff and Class Members*; and (ix) the diminished value of Broward's goods and services Plaintiff and Class Members received.

*Id.* ¶ 147; *see also id.* ¶¶ 184, 201. In Count V for Breach of Confidences, Plaintiff states:

> As a direct and proximate result of Broward's breach of its duty, Plaintiff and Class Members have suffered injuries, including:
> a. Theft of their PHI;
> b. Costs associated with the detection and prevention of identity theft and unauthorized use of the financial accounts;
> c. *Costs associated with purchasing credit monitoring and identity theft protection services;*
> d. Lowered credit scores resulting from credit inquiries following fraudulent activities;
> e. Costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Broward Data Breach – including finding fraudulent charges, cancelling and reissuing cards, enrolling in credit monitoring and identity theft protection services, freezing and unfreezing accounts, and imposing withdrawal and purchase limits on compromised accounts by the Plaintiff, the Class and/or their parents or guardians;
> f. The ongoing, imminent and certainly impending injury flowing from the increased risk of potential fraud and identity theft posed by their PHI being placed in the hands of criminals;

> g.  Damages to and diminution in value of their PHI entrusted, directly or indirectly, to Broward with the mutual understanding that Broward would safeguard Plaintiff's and Class Members' data against theft and not allow access and misuse of their data by others;
> h.  Continued risk of exposure to hackers and thieves of their PHI, which remains in Broward's possession and is subject to further breaches so long as Broward fails to undertake appropriate and adequate measures to protect Plaintiff's and Class Members' data;
> i.  Loss of their privacy and confidentiality in their PHI;
> j.  The erosion of the essential and confidential relationship between Broward – as a health care services provider – and Plaintiff and Class members as patients; and
> k.  Loss of personal time spent by the Plaintiff, the Class and/or their parents or guardians carefully reviewing statements from health insurers and providers to check for charges for services not received, as directed to do by Broward.

(Compl. ¶ 212) (emphasis supplied). Specifically, Plaintiff seeks the costs associated with purchasing credit monitoring and identity theft protection services along with the future costs that will allegedly be expended to prevent and detect the allegedly impacted private information for the remainder of the lives of Plaintiff and Class Members. To prevent and detect allegedly impacted private information, Equifax, LifeLock, and Experian are three identity-protection agencies that advertise monthly rates for credit-monitoring services ranging from $8.99 to $19.99 per person per month. For example, LifeLock offers a product that provides 1-Bureau credit monitoring with up to $25,000 in "stolen funds reimbursement" for $8.99 per month for the first year.[5] Equifax and Experian also offer products that provide 3-Bureau credit monitoring with up

---

[5] The LifeLock Standard option paid monthly starts at $8.99 per month for the first year and renews at $11.99 per month. *See* https://www.lifelock.com/lp/sem/semidt-b-mbg-lsa?promocode=BSEM60MBGCBU&om_sem_cid=hho_sem_sy:us:bng:en:e:br:ll&utm_source=bing&utm_medium=cpc&utm_campaign=304067836&adgroup=1297423769623682&utm_term=lifelock&matchtype=e&utm_content=81089046242792&network=o&device=c&adp=&testgroup=&gclid=baf3971fc74613643f1df6eff7b58005&gclsrc=3p.ds&msclkid=baf3971fc74613643f1df6eff7b58005.

to one million in identity theft insurance for approximately twenty dollars per month.[6] Plaintiff and Class Members are seeking monitoring for **the remainder of their lives**. Multiplying the cost of providing only one month of credit-monitoring services at $8.99, for example, by approximately 1.35 million Class Members, the amount in controversy for credit monitoring is $12,136,500.

Further, in Count II for breach of contract, Plaintiff and Class Members seek damages "including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney fees, costs, and expenses." *Id.* ¶ 155. In Count V, Plaintiff and Class Members also allege that they "are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial." *Id.* ¶ 216. In the Prayer for Relief, Plaintiff and Class Members seek "actual, nominal, and consequential damages, as allowed by law in an amount to be determined . . . ." While the Complaint, as expected, does not quantify these damages, when these alleged damages are added to the costs associated with just thirty minutes of lost wages for the entire class plus the cost of credit monitoring, the amount in controversy will further exceed CAFA's $5,000,000 threshold.

In addition to the damages discussed above, in Count VII, Plaintiff asserts a claim for injunctive and declaratory relief. The Eleventh Circuit has held that "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Anderson v. Wilco Life Ins. Co.*, 943 F.3d 917, 925 (11th Cir. 2019) (internal citations omitted). In other words, "the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were

---

[6] The credit monitoring offered with Equifax is $4.95 for the first 30 days and then $19.95 per month. *See* https://www.equifax.com/equifax-complete/Equifax/?CID=2_equifax%20credit%20monitoring_G_e&adID=502355. Experian CreditLock is free for the first 30 days and then $19.99 per month. *See* https://www.experian.com/lp/creditlock.html?bcd=ad_c_sem_427_515842009606.

granted." *Id.* (internal citation omitted). Here, Plaintiff seeks a declaration that Broward Health must implement and maintain reasonable security measures, including, in part, that "Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing . . . ." (Compl. ¶ 226).

As another category of damages, Plaintiff alleges that "[a]s a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses." (Compl. ¶ 148); *see also id.* ¶¶ 185, 202. Notably, courts have considered claims for emotional distress in determining the amount in controversy. *Barnes v. JetBlue Airways Corp.*, No. 07-60441, 2007 WL 1362504, at *2 (S.D. Fla. May 7, 2007); *Brown v. Cunningham Lindsey U.S.*, Inc., No. 305CV141J32HTS, 2005 WL 1126670, at *5 (M.D. Fla. May 11, 2005). Adding these costs to the costs associated with Plaintiff's claim for lost wages, credit monitoring, and other categories of damages, the total amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000.

## IMPACT OF SOVEREIGN IMMUNITY

Under well-settled Florida law, the state and its agencies or subdivisions are entitled to sovereign immunity. *See* Fla. Stat. § 768.28(1). Section 768.28(1) states:

> [i]n accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but <u>only to the extent specified in this act</u>. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for <u>injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission</u> of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted <u>subject to the limitations specified in this act</u>. . . .

(emphasis supplied).

Here, North Broward Hospital District d/b/a Broward Health is a special independent taxing district created pursuant to Chapter 27438, Laws of Florida, Special Acts of 1951, as amended. Plaintiff is not seeking damages for the loss of property, personal injury, or death caused by the negligent or wrongful act or omission. Accordingly, Broward Health has not waived sovereign immunity and all of Plaintiff's claims on behalf of herself and the Class Members are barred.

Section 768.28(5)(a) also provides that "[n]either the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $200,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $300,000." Thus, even if Plaintiff's claims are not entirely barred, Plaintiff's recovery from Broward Health for her and the Class Members' tort claims is, subject to Section 768.28(5), capped at $300,000 for the aggregate of the class.[7]

## NOTICE

As required by 28 U.S.C. 1446(d), Defendant is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County, Florida.

Respectfully submitted,

/s/ *Peter R. Goldman*
Peter R. Goldman

---

[7] Broward Health preserves all defenses, including, without limitation, under Section 768.28, Florida Statutes, and that Plaintiff and Class Members lack Article III standing.

        Florida Bar No. 860565
        Nina Welch
        Florida Bar No. 118900
        Danna Khawam
        Florida Bar No. 1025114
        Nelson Mulllins
        100 S.E. Third Avenue, Suite 2700
        Fort Lauderdale, Florida 33394
        Phone: (952)764-7060 / Fax: (954)761-8135
        peter.goldman@nelsonmullins.com
        nina.welch@nelsonmullins.com
        danna.khawam@nelsonmullins.com

        AND

        Mark L. Krotoski
        Phillip Wiese
        MORGAN, LEWIS & BOCKIUS LLP
        1400 Page Mill Road
        Palo Alto, California 94304
        Phone: (650) 843-4000
        mark.krotoski@morganlewis.com
        phillip.wiese@morganlewis.com
        *pro hac vice application forthcoming*

        *Counsel for North Broward Hospital*
        *District d/b/a Broward Health*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on March 11th, 2022 the foregoing document was filed with the Clerk of the Court using CM/ECF. I further certify that the foregoing document was served on counsel whom have provided designated e-mail addresses for service via transmission of Notices of Electronic Filing generated by CM/ECF.

        */s/ Peter R. Goldman*
        Peter R. Goldman